IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILL MCLEMORE, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 3:19-cv-00530 |
| | ) |
| v. | ) JUDGE RICHARDSON |
| | ) |
| ROXANA GUMUCIO, et al., | ) MAGISTRATE JUDGE FRENSLEY |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' REVISED STATEMENT OF UNDISPUTED MATERIAL FACTS**

In compliance with this Court's June 11, 2021, Order on Defendants' motion to strike, Plaintiffs gave notice on June 21, 2021, of the statements of material fact to be stricken from their statement of undisputed material facts in support of their motion for summary judgment. Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.01, Defendants now respond to the remaining statements of undisputed material fact, as follows:

**RESPONSES**

1. Plaintiff Will McLemore is a U.S. citizen who resides in Tennessee. He is the president of McLemore Auction Company, LLC, and its sole member. He also organized the Interstate Auction Association in June of 2019 even though he is a licensed auctioneer. Compl. & Ans. ¶ 6; McLemore 30(b)(6) Dep. 8:3-11; IAA 30(b)(6) Dep. 6:9-13; McLemore Decl. (July 3, 2019), Doc. 18-1, PageID #: 679 ¶¶ 1-5.

   **Response: Undisputed.**

2. Plaintiff McLemore Auction Company, LLC, is a Tennessee limited liability company in good standing. McLemore Auction has a physical location in Nashville, TN. Compl. & Ans. ¶ 7; McLemore Decl. (July 3, 2019), Doc. 18-1, PageID #: 679 ¶ 5.

**Response: Undisputed.**

3. Plaintiff Aaron McKee is a U.S. citizen who resides in Kansas. He is the President and CEO of Purple Wave, Inc. Compl. & Ans. ¶ 8; Purple Wave 30(b)(6) Dep. 9:6-7; McKee Decl. (July 1, 2019), Doc No. 18-2, PageID #: 682 ¶¶ 1-4.

**Response: Undisputed.**

4. Plaintiff Purple Wave, Inc. is a privately held corporation, incorporated in Delaware, with its headquarters physically located in Manhattan, KS. Compl. & Ans. ¶ 9.

**Response: Undisputed.**

5. Plaintiff Interstate Auction Association (IAA) is an unincorporated association with members who are dedicated to online auctioneer freedom. It was organized by Will as a direct response to PC 471, and is made up primarily of online auctioneers, licensed and unlicensed. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4; IAA 30(b)(6) Dep. 5:2-15, 10:10-12; McLemore 30(b)(6) Dep. 50:3-7.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

8. McLemore Auction conducts auctions of real estate and personal property mostly, but not entirely, in Tennessee via its internet platform, https://www.mclemoreauction.com. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4; McLemore Decl. (July 3, 2019), Doc. 18-1, PageID #: 679 ¶ 6; McLemore 30(b)(6) Dep. 15:2-6.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

16. When an auction goes live, bidding opens on the website, and the auction software closes the auction automatically based on extended-bidding: if someone bids in the last five minutes, the time is extended for five minutes but the auction closes when no one has bid for five minutes. McLemore 30(b)(6) Dep. 24:17-25:10; Harbin Decl. Ex. 8 at Interrogatory No. 6.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

28. Will does not require an auctioneer license for individuals working at McLemore Auction. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4; TAC 30(b)(6) Dep. 141:20-142:3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

29. Will represents and advertises on McLemore Auction's website that it conducts online auctions, all of which close based on bidding activity. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

35. The images and descriptions are designed to influence bidding activity by informing the audience about unique conditions and characteristics of the goods and real estate. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

36. Will auctions goods online that may have historic value, or may be collector's items, or may have value based on who owned them. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

37. When Will auctions goods online that he or one of his employees believes has such significance, the webpage will include a narrative intended to convey that significance. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

38. If origin or ownership of the items is of significance, he or one of his employees will detail where they came from and why that is significant on the website listing. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

44. McLemore Auction generated more than $800,000 in revenue during the 2018 calendar year from the sale of goods or real estate in online auctions. McLemore Decl. (April 15, 2021) ¶ 10.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

45. McLemore Auction generated more than $1,500,000 in revenue during the 2019 calendar year from the sale of goods or real estate in online auctions. McLemore Decl. (April 15, 2021) ¶ 11.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

46. McLemore Auction generated more than $2,000,000 in revenue during the 2020 calendar year from the sale of goods or real estate in online auctions. McLemore Decl. (April 15, 2021) ¶ 12.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

49. Purple Wave conducts auctions of agriculture equipment, construction equipment, industrial, fleet, and government assets via its internet platform, www.purplewave.com. McKee Decl. (July 1, 2019), Doc No. 18-2, PageID #: 682 ¶ 5; Purple Wave 30(b)(6) Dep. 12:19-13:3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

56. No person employed by Purple Wave holds any license issued by the Tennessee Auctioneer Commission (TAC). McKee Decl. (July 1, 2019), Doc No. 18-2, PageID #: 683 ¶ 16; McKee Compl. Verification, Doc. 4, PageID #: 59 ¶¶ 2-4; Purple Wave 30(b)(6) Dep. 37:18-38:3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

66. In calendar year 2019, Purple Wave generated $519,756 in sales from 46 winning bidders located in Tennessee in extended-time online auctions. McKee Decl. (April 29, 2021) ¶ 7.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

67. In calendar year 2019, Purple Wave generated $102,420 in sales from assets located in Tennessee in eight (8) online, extended-time auctions. McKee Decl. (April 29, 2021) ¶ 8.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

68. In calendar year 2019, Purple Wave generated $87,725 in sales from assets owned by Tennessee sellers in six (6) online, extended time auctions. McKee Decl. (April 19, 2021) ¶ 9.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

69. In calendar year 2020, Purple Wave generated $1,093.582 in sales from 66 winning bidders located in Tennessee in online, extended-time auctions. McKee Decl. (April 29, 2021) ¶ 10.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

70. In calendar year 2020, Purple Wave generated $42,130 in sales from assets located in Tennessee in six (6) online, extended-time auctions. McKee Decl. (April 29, 2021) ¶ 11.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

72. In calendar year 2021, as of April 26, 2021, Purple Wave has generated $226,248 in sales from 22 winning bidders located in Tennessee in online, extended-time auctions. McKee Decl. (April 29, 2021) ¶ 13.

**Response: Defendants object to Plaintiffs' use of the phrase "online extended-time auctions" to suggest that their auctions are timed listings, which they are not. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

78. Members of the IAA include Will, Barbara Womack, Aaron McKee, Chris Rasmus, Philip Gableman, Jamie Boyd, Wilson Land, Blake Kimball and Sam Tays. Compl. & Ans. ¶ 206; Harbin Decl. Ex. 10 at Interrogatory No. 3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

79. Blake Kimball is an independent contractor who has worked with McLemore Auction since 2007. Kimball Decl. ¶ 5.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

80. Blake is an Auction Manager. Kimball Decl. ¶ 7.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

81. As an auction manager, Blake evaluates auction opportunities, negotiates deals with property owners, catalogues assets, manages inspections of property, uploads pictures and descriptions of assets into the auction software, and oversees the removal of assets from the owners' premises. Kimball Decl. ¶ 8.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

82. Blake holds no license issued by the TAC. Kimball Decl. ¶ 9.

**Response: Undisputed.**

130. The 2006 enactment exempting "timed listings that allow bidding on an Internet website" is also called "the eBay exemption." Allen Dep. 34:4-18; TAC 30(b)(6) Dep. 33:3-12; Harbin Decl. Ex. 7 (TNAUC 000709-10) ("Please be aware that the entire auction falls under an exception (2006 Ebay exception) in the Auctioneer statutes.").

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that some people have referred to Tenn. Code Ann. § 62-19-103(9) as "the eBay exemption"; however, the face of the statute shows that it applies to any fixed price or timed listing and is in no way specific to eBay.** *See* **Tenn. Code Ann. § 62-19-103(9).**

205. As part of its purpose, the 2018 Task Force analyzed three years of auctioneer complaints, broken down by consumer-based complaints, and complaints for extended time and fixed time auctions. Compl. ¶ 152; TAC 30(b)(6) Dep. 75:22-76:9.

**Response: Defendants object to this statement to the extent that it suggests that timed listings are auctions, which they are not.** *See* **Tenn. Code Ann. §§ 62-19-101(2) & -103(9); Op. Tenn. Att'y Gen. 06-053 at 4 (Mar. 27, 2006). Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

206. The Task Force ultimately produced a table that is publicly available on the TAC's website. Compl. & Ans. ¶ 153; <https://www.tn.gov/commerce/regboards/auction-lawtf/additional-resources-.html>.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

207. This is an image of the table taken from the Auctioneer Law Modernization Task Force website:

| Online Auction Complaint Data | FY 2016 | FY 2017 | FY 2018 | Total |
|---|---|---|---|---|
| Total number of auctioneer complaints | 37 | 34 | 46 | **117** |
| Total number of consumer-generated complaints | 24 | 29 | 33 | **86** |
| Total number of complaints regarding online auctions | 7 | 4 | 4 | **15** |
| Total number of consumer-generated complaints regarding online auctions | 5 | 3 | 3 | **11** |
| Total Number of complaints regarding online auctions with extended time endings | 2 | 1 | 0 | **3** |

Compl. & Ans. ¶ 154; <https://www.tn.gov/commerce/regboards/auction-law-tf/additional-resources-.html>.

**Response: Undisputed.**

211. Of the five (5) complaints categorized as consumer-generated complaints (FY 2016), regarding online auctions, "two or three" were live auctions that "also had live simulcast" bidding online. TAC 30(b)(6) Dep. 95:4-7.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that two or three of the complaints included an allegation of a live auction with simulcast bidding online; however, none of the facts alleged by the complainants or the respondents in these matters were ever established because the Commission dismissed the complaints for lack of jurisdiction. (TAC 30(b)(6) Dep. at 82-104).**

212. Of these five (5) complaints (FY 2016), none resulted in an actual finding of a violation against the respondent. TAC 30(b)(6) Dep. 95:8-10.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that the reason that none of the complaints resulted in a**

9

**finding of a violation against the respondent is that they were all dismissed by the Commission for lack of jurisdiction. (TAC 30(b)(6) Dep. at 82-104).**

213. Of the three (3) complaints categorized as consumer-generated complaints (FY 2017), regarding online auctions, one was a simulcast broadcast of a live auction. TAC 30(b)(6) Dep. 98:5-10 ("I think that they [RLM] had something simulcast. …I think that's correct.").

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that one of the complaints included an allegation of a simulcast broadcast of a live auction; however, none of the facts alleged by the complainant and the respondent in the referenced matter were ever established because the Commission dismissed the complaint for lack of jurisdiction. (TAC 30(b)(6) Dep. at 82-104).**

214. Of these three (3) complaints (FY 2017), one (1) resulted an actual finding of a violation against the respondent. TAC 30(b)(6) Dep. 98:16-18.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that the matter was resolved by consent order. (TAC 30(b)(6) Dep. Ex. 6).**

215. The respondent in that one case was PCI Auctions. TAC 30(b)(6) Dep. 98:16-20.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

216. The TAC found that because PCI held an online auction with an extended-time bidding format, it could not rely on the fixed-time exemption and thus, required a license to conduct an auction. TAC 30(b)(6) Dep. 96:19-97:13, 114:21-115:25; *see id.* at Ex. 6 (PCI administrative proceeding documents).

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order provides, "Respondent allows the time to be extended during the auction bidding process on Respondent's website and as stated by Respondent's representative by phone, therefore Respondent does not qualify for any licensing exceptions under Tenn. Code Ann. § 62-19-103. Respondent either needs a valid auctioneer's license to continue their current business practices or needs to change their practice of extending time." (TAC 30(b)(6) Dep. Ex. 6 at TNAUC_000350).**

217. Of the three (3) complaints categorized as consumer-generated complaints regarding online auctions (FY 2018), one was "performing a live auction on Facebook." TAC 30(b)(6) Dep. 99:10-15.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that one of the complaints included an allegation of performing a live auction on Facebook; however, none of the facts alleged by the complainant and the respondent in the referenced matter were ever established because the Commission dismissed the complaint for lack of jurisdiction. (TAC 30(b)(6) Dep. at 82-104).**

218. Another of the three complaints categorized as consumer-generated complaints, FY 2018, regarding online auctions, was a simulcast of a live auction with an online component. TAC 30(b)(6) Dep. 102:4-17.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that another of the complaints included an allegation of an auction advertisement that stated "Online bidding through Bid Spotter will be available at this live auction" (TAC 30(b)(6) Dep. at 101:15-102:12); however, none of the facts alleged by the**

11

**complainant and the respondent in the referenced matter were ever established because the Commission dismissed the complaint for lack of jurisdiction (*id.* at 102:18-22).**

219. Of these three complaints (FY 2018), none resulted an actual finding of a violation against the respondent. TAC 30(b)(6) Dep. 104:2-4.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that the reason that none of the complaints resulted in a finding of a violation against the respondent is that they were all dismissed by the Commission for lack of jurisdiction. (TAC 30(b)(6) Dep. at 82-104).**

220. Since 2006, the TAC has taken enforcement actions against unlicensed person(s) for online auctions twice, of those two, only was not also simulcast. TAC 30(b)(6) Dep. 105:1-16, 112:11-14; *see id.* at Interrogatory No. 17.

**Response: Disputed. Since 2006, the TAC has taken enforcement actions against unlicensed persons for online auctions at least three times. (TAC 30(b)(6) Exs. 5-7).**

221. The first of these two actions was taken against Jaspar Trading House and Auction in August of 2016. TAC 30(b)(6) Dep. 106:10-24, Ex. 5 (Jaspar administrative proceeding documents).

**Response: Disputed that there were two actions. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that the correct month and year is August of 2017. (TAC 30(b)(6) Dep. Ex. 5 at TNAUC_000798-802).**

222. Jaspar was not an online-only auction. TAC 30(b)(6) Dep. 112:11-14.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

12

223. The other was taken in March of 2017 against PCI Auction Group. TAC 30(b)(6) Dep. 113:4-8, Ex. 6 (PCI administrative proceeding documents).

**Response: Disputed that there were two actions. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

224. In 2014, the TAC entered a consent order with auction company Everything but the House ("EBTH"). TAC 30(b)(6) Dep. 120:4-9 (acknowledging Exhibit 7 is consent order for EBTH from 2014), 122:19-22 (admission of Exhibit 7); *see id.* Ex. 7 (EBTH administrative proceeding documents).

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that the consent order was executed in 2015. (TAC 30(b)(6) Dep. Ex. 7 at 6).**

225. The consent order relates that EBTH is located in Cincinnati, Ohio. TAC 30(b)(6) Dep. 121:9-16; *see id.* Ex. 7.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order lists 4650 Wilmer Avenue, Cincinnati, OH 45226 as an address for Everything But The House. (TAC 30(b)(6) Dep. Ex. 7 at 1).**

226. The TAC entered an order stating that EBTH was engaging in unlicensed activity for advertising an inspection to preview an upcoming sale in Nashville. TAC 30(b)(6) Dep. Ex. 7 at 3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order provides, "Respondent recently held an inspection advertised online at http://www.EstateSales.NET/estate-sales/TN/Nashville/37211/754167, which stated, 'Please join us for the preview at 2704 Eugenia Avenue, Nashville, TN 37211 on**

**Tuesday, October 28 from 4:00 P.M. to 7:00 P.M. Central Time.' Such advertisement was printed on November 17, 2014 and advertised 129 items for sale." (TAC 30(b)(6) Dep. Ex. 7 at 3).**

**Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order further provides that EBTH's actions described in the consent order "constitute[] unlicensed activity on the part of" EBTH. (*Id.*).**

227. The TAC determined that EBTH did not fall under statutory exemptions for fixed price or timed listings because EBTH's terms of use stated, "All online sales will feature our automatic extension system. If an item receives a bid within the last 5 minutes, the close time will be extended 5 minutes from the time the bid is placed. The time will continue to be extended for 5 minutes with each newly placed bid and the item will not close until 5 minutes have elapsed with no additional bid activity." TAC 30(b)(6) Dep. Ex. 7 at 3.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order provides, "Per the Terms & Conditions found on Respondent's website at https://www.ebth.com/sales/5793-nashville-tennessee-showroom-sale, 'All online sales will feature our automatic extension system. If an item receives a bid within the last 5 minutes, the close time will be extended 5 minutes from the time the bid is placed. The time will continue to be extended for 5 minutes with each newly placed bid and the item will not close until 5 minutes have elapsed with no additional bid activity.'" (TAC (30(b)(6) Dep. Ex. 7 at 3).**

**Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that the consent order further provides, "Respondent does not fall under the exemption in T.C.A. 62-19-103(a) [sic] for fixed price or timed listings." (*Id.*).**

14

228. EBTH was fined $2,000 and ordered to cease and desist activities violating 62-19-102 (prohibiting any person from acting as, advertising as, or representing themselves to be an auctioneer without holding a valid license issued by the TAC) for engaging in unlicensed activity. TAC 30(b)(6) Dep. Ex. 7 at 4-5.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only that pursuant to the consent order, EBTH was ordered to pay a civil penalty in the amount of $2,000 and to "CEASE AND DESIST from all such activities which are in violation of TENN. CODE ANN. § 62-19-101 *et seq.* and the rules promulgated thereunder." (TAC 30(b)(6) Dep. Ex. 7 at 4-5).**

263. In response to the rising coronavirus pandemic in the spring of 2020, executive director Roxana Gumucio posted a letter on its website that "in-person auctions at this time are prohibited." TAC 30(b)(6) Dep. Ex. 11; *id.* at 149:1-150:1, 150:18-25; <https://www.tn.gov/content/dam/tn/commerce/documents/regboards/auction/posts/COVID-19-Letter_4-62020.pdf>.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

264. The letter also provided that "[l]icensees do have the option to conduct auctions online." TAC 30(b)(6) Dep. 150:18-25; *id.* at Ex. 11.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

266. Defendants are "not aware of" any adverse impacts on the public from the prohibition of in-person auctions. TAC 30(b)(6) Dep. 151:18-21.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that during that time, the Tennessee Auctioneer**

15

Commission was "enjoined and restrained from applying Tennessee's auctioneering laws and licenses to 'electronic' exchanges, or online auction websites." (DE #30 at 2).

267. Defendants do not have any evidence that Tennessee consumers who participated in auctions have been victimized more by fraud or deceptive practices during the prohibition on in-person auctions. TAC 30(b)(6) Dep. 152:4-12 ("I don't have any data to support that."), 152:10- 11 (Q: "So you're not aware of any evidence?" A: "Correct.").

**Response: This statement is legal argument, not fact, which is not appropriate for a statement of undisputed material facts. Moreover, during this time, the Commission had no jurisdiction to regulate online auctions because it was "enjoined and restrained from applying Tennessee's auctioneering laws and licenses to 'electronic' exchanges, or online auction websites." (DE #30 at 2).**

281. The state believes twelve states "regulate or license at the state or local level." TAC 30(b)(6) Dep. Ex. 1 at Interrogatory No. 7; 30(b)(6) Dep. of TAC 11:14-17.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

312. Purple Wave, Rasmus, and AAR are extended-time online auction companies that do not have a physical office location in Tennessee. McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4; McLemore 30(b)(6) Dep. 45:6-8, 51:10-20, 53:16-18.

**Response: Defendants object to Plaintiffs' use of the phrase "extended-time online auction," which has no meaning under Tennessee law. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

313. Purple Wave, Rasmus, and AAR act as and represent to be auction companies on their websites. Purple Wave, *About Us*, <https://www.purplewave.com/about>; Rasmus Auctions,

16

*About*, <https://rasmus.com/about>; AAR, *How to Bid*, <https://aarauctions.com/how-to-bid/>; McLemore Decl. (April 15, 2021) ¶ 19.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only, with the clarification that they do not act as or represent to be Tennessee auction companies. (Purple Wave Dep. at 87:14-88:10).**

314. Purple Wave, Rasmus, and AAR are operated by individuals who are not licensed by the TAC, including Aaron, Chris, and Philip. McLemore Decl. (April 15, 2021) ¶¶ 19-20; IAA 30(b)(6) Dep. 17:25-18:9, 19:1-11; Purple Wave 30(b)(6) Dep. 11:9-11.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

325. IAA's membership includes Purple Wave and Rasmus, out-of-state persons who operate extended-time online auction websites with no physical presence in Tennessee; the auction platforms are operated by individuals unlicensed by the TAC and allow bidders in Tennessee to bid on the platform. IAA 30(b)(6) Dep. 7:7-12, 17:25-18:1; McLemore Compl. Verification, Doc. 4, PageID #: 58 ¶¶ 2, 4.

**Response: Defendants object to Plaintiffs' use of the phrase "extended-time online auction," which has no meaning under Tennessee law. Otherwise, undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

326. In an online auction, the goods or real estate are not physically before the audience to see and inspect the goods or real estate. Compl. & Ans. ¶ 306.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

332. The state's 30(b)(6) witness testified that it is not possible to conduct an auction, as regulated by the TAC, without communicating orally, in writing, or electronically. TAC 30(b)(6) Dep. 20:12-21:2.

**Response: Undisputed for the purpose of ruling on the plaintiffs' motion for summary judgment only.**

                                                Respectfully Submitted,
                                                HERBERT H. SLATERY III
                                                Attorney General and Reporter

                                                s/R. Mitchell Porcello
                                                R. MITCHELL PORCELLO (#25055)
                                                Senior Assistant Attorney General
                                                Attorney General's Office
                                                P.O. Box 20207
                                                Nashville, TN 37202-0207
                                                (615) 532-2547 *telephone*
                                                (615) 532-2571 *fax*
                                                Mitch.Porcello@ag.tn.gov
                                                *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the foregoing Response has been served on the following via the court's electronic filing system on June 25, 2021:

Braden H. Boucek
Southeastern Legal Foundation
560 West Crossville Rd. Suite 104
Roswell, GA 30075
(770) 977-2131
Fax: (770) 977-2134
bboucek@southeasternlegal.org

David L. Harbin (da.harbin@comcast.net)
Meggan S. DeWitt (Meggan@beaconTN.org)
Beacon Center of Tennessee
201 4th Ave. N.
Suite 1820
P O Box 198646
Nashville, TN 37219
(615) 383-6431
Fax: (615) 383-6432

*Counsel for Plaintiffs*

                                                              s/R. Mitchell Porcello

19

Case 3:19-cv-00530   Document 114   Filed 06/25/21   Page 19 of 19 PageID #: 4667