IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILL MCLEMORE, et al., | ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:19-cv-00530 ) |
| ROXANA GUMUCIO, et al., | ) JUDGE RICHARDSON ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

On March 23, 2022, the Court granted Plaintiffs' Motion for Summary Judgment. (Doc. No. 117). In granting Plaintiffs' Motion for Summary Judgment, the Court found that summary judgment was appropriate in the form of some kind of permanent injunctive relief related to 2019 Tenn. Pub. Acts, Ch. 471 ("PC 471") (the legislative enactment challenged by Plaintiffs in this lawsuit). However, the Court indicated that it was unclear (and Plaintiffs had not made clear their view) regarding what the precise scope of that relief should be. Thus, the Court ordered Plaintiffs to "advise the Court of the scope of relief that they seek and the legal basis for receiving it in light of the Court's holding herein" and allowed Defendants an opportunity to respond. (*Id*. at 1-2).

"Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 420 (1977) (internal quotations and citations omitted); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (noting "the scope of injunctive relief is dictated by the extent of the violation established"). An injunction should be "no more burdensome than necessary to provide complete relief." *Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 778 (1994); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998) ("Injunctive relief involving

matters subject to state regulation may be no broader than necessary to remedy the constitutional violation."); *Knop v. Johnson*, 977 F.2d 996, 1008 (6th Cir. 1992) ("Injunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation."). In short, the scope of the remedy is determined by the nature of the violation. *See Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977).

Following the Court's directive, Plaintiffs filed a "Notice of Relief Sought" (Doc. No. 118, "Notice"), wherein Plaintiffs request an injunction couched as follows:

> Defendants and their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby enjoined and restrained from applying Tennessee's auctioneering laws, licenses, and regulations to electronic exchanges, or online auction websites, or against Plaintiffs.

(*Id*. at 1). Plaintiffs argue that "an 'across the board injunction' aimed at the regulation of 'electronic' communications 'is proper.'" (*Id*. at 3 (citing *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016))). Plaintiffs specifically point out that they brought a facial challenge to PC 471, and therefore, the scope of their requested relief redresses the violation itself even if it benefits nonparties." (*Id*. at 3-4). Plaintiffs further argue that "[t]his injunction would not 'exceed appropriate limits' . . . [because] [i]t would not eliminate "a condition that does not violate the Constitution or does not flow from such a violation." (*Id*. at 5).

In Response, Defendant' argue that Plaintiffs' proposed injunction is too broad and that "[t]he injunctive relief sought by Plaintiffs is not tailored to fit the nature and extent of the constitutional violation found by this Court." (Doc. No. 119 at 1 (citing *Dayton Bd. of Ed*., 433 U.S. at 420)). Defendants contend that, in its Order (Doc. No. 117) granting summary judgment to Plaintiffs (not to mention the Court's corresponding Memorandum opinion, Doc. No. 116), "[t]his Court found that the provision of [PC 471], adding the term 'electronic' to the statutory definition of 'auction' results in extraterritorial application of the State's auctioneering statutes and

regulations in violation of the Dormant Commerce Clause." (Doc. No. 119 at 1). This contention is accurate; the gist of the Court's ruling was PC 471 was unconstitutional in one particular respect; namely, it is unconstitutional to the extent that, under Section 4(2), it expands the definition of "auction" for purposes of Tennessee's auctioneering statutes (specifically, Title 62, Chapter 19 of the Tennessee Code, titled "Auctioneers") to include any sales transaction "conducted by . . . electronic exchange," thereby causing those statutes to have an extraterritorial effect.[1] As both parties seem to recognize, in the Court's view the constitutional problem with PC 471 is the effect of Section 4(2) on Tennessee's other auctioneering statutes (and associated regulations and licensing requirements). And the question is how to frame an injunction that cures this problem and does so neither too broadly nor too narrowly.

Of course, Defendants do not concede that the Court's finding of a constitutional violation was correct or that any corresponding injunction is appropriate. But they contend that, assuming arguendo that the Court's grant of summary judgment was appropriate, the corresponding injunction "should [ ] be tailored to the relevant definition of auction[.]" (*Id.*). Again, consistent with the comments in the paragraph immediately above, this contention is correct. As for the couching of an injunction that is appropriately tailored, Defendants recommend an injunction

> limited to prohibiting Defendants, their agents and employees, and anyone acting on their behalf from applying the State's auctioneering statutes, regulations, and licensing requirements to
>
>> "sales transaction[s] conducted by . . . *electronic exchange* between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by

---

[1] In ruling in Plaintiffs' favor on the parties' cross motions for summary judgment, the Court held that "the language from the four corners of PC 471—considering its natural and ordinary meaning—unambiguously indicates an intent for PC 471 to have extraterritorial effect." (Doc. No. 116 at 23). To be more precise, the extraterritorial effect of the relevant portion of PC 471 is the result of its effect on all of Tennessee's auctioneering laws; the relevant portion of PC 471—which is a statutory definition that establishes the reach of *Tennessee's auctioneering statutes as a whole*— imparts extraterritorial effect to Tennessee's auctioneering statutes in general.

> the auctioneer of the highest or most favorable offer made by a member of the participating audience."

(*Id*. (quoting PC 471, § 4 (emphasis added))). It is apparent that Defendants' proposed injunction matches Plaintiffs' in that each would prohibit application of Tennessee's auctioneering laws to sales transactions conducted by electronic exchange. But it is also apparent that Defendants' proposal differs substantively from Plaintiffs' in two (and only these two) respects. Specifically, Plaintiffs' proposed injunction, but not Defendants', would prohibit application of Tennessee's auctioneering laws to (i) online auctions; and (ii) Plaintiffs.

"The scope of injunctive relief is dictated by the extent of the violation established"). *Califano*, 442 U.S. at 702. Thus, "[i]njunctive relief involving matters subject to state regulation may be no broader than necessary to remedy the constitutional violation." *Kallstrom*, 136 F.3d at 1069. The Court agrees with Defendants that Plaintiffs' requested injunction exceeds the scope of the constitutional violation identified by the Court as described above and is broader than necessary to remedy such violation. The Court's constitutional violation as found by the Court was limited to the language in PC 471 that would have the effect—an extraterritorial and thus unconstitutional effect—of extending the reach of Tennessee's auctioneering laws to "electronic exchanges." And Plaintiffs' request for the Court to enjoin Defendants "from applying Tennessee's auctioneering laws, licenses, and regulations to electronic exchanges, or online auction websites, or against Plaintiffs," (Doc. No. 118 at 1), exceeds this scope.[2]

---

[2] In their Notice, Plaintiffs note that the Court, after granting Plaintiffs' Motion for a Preliminary Injunction on July 23, 2019, issued a preliminary injunction that mirrors the language in Plaintiffs' requested permanent injunction (Doc. No. 30). Thus, Plaintiffs argue that it is appropriate to use the same language the Court used in the preliminary injunction in the permanent injunction. The Court, however, disagrees and declines to do so. The Court's preliminary injunction was just that—*preliminary* relief. The Court finds that the injunction crafted by the Court in this Order more appropriately encompasses the extent of the Court's final ruling on the parties' cross motions for summary judgment.

The Court's holding on summary judgment was not intended as a proclamation that Defendants may never apply any of Tennessee's auctioneering laws (or regulations or licensing requirements) against *Plaintiffs*. And it cannot reasonably be construed to have such an implication. True, under the Court's holding, Tennessee's auctioneering laws could not be applied to Plaintiffs, just as they could not be applied to anyone else, to the extent that Plaintiffs are engaged in sales transactions (that otherwise meets Section 4(2)'s definition of "auction") involving *electronic exchanges*. And it may be that Plaintiffs do not currently contemplate ever engaging in sales transactions (that could otherwise meet Section 4(2)'s definition of "auction") that do not involve electronic exchanges. But Plaintiffs conceivably could engage in sales transactions *not* involving electronic exchanges that would fall within Section 4(2)'s definition of "auction" even with "electronic exchanges" excised from that definition.[3] To say the least, the Court's decision in favor Plaintiffs did not establish that application of Tennessee's laws to Plaintiffs in such a context would be unconstitutional. So a complete prohibition against the application of Tennessee's auctioneering laws to Plaintiffs is unwarranted. And so the Court declines to enjoin the application of Tennessee's laws to Plaintiffs in particular.

As for the Plaintiffs' request that the injunction cover the application of Tennessee's auctioneering statutes (and regulations and licensing requirements) to "online auctions," that request would be: (i) confusing in light of the absence of the term "online auction" from the

---

[3] Thus, it would be speculation (albeit not necessarily baseless speculation) to conclude that in any case in which Tennessee's auctioneering laws were to be applied to Plaintiffs, it would necessarily be as a result of sales transactions involving electronic exchanges, rather than sales transactions not conducted through electronic means. And the Court declines to issue a proposed injunction based on speculation. Plaintiffs' proposed permanent injunction would reflect sheer speculation that *any* application of *any* extant (or even hypothetical) law or regulation described in Plaintiffs' proposal would be unconstitutional. *See California ex rel. Lockyer v. U.S. Forest Serv.*, No. C 04-02588 CRB, 2006 WL 2038491, at *2 (N.D. Cal. July 20, 2006) ("Plaintiff's own suggested wording for a proposed permanent injunction highlights the speculative nature of any order the Court might render, which would be based entirely on a hypothetical set of facts").

relevant portion of PC 471; and (ii) redundant considering the apparently undisputed meaning of the term "electronic exchange." Regarding the first point, the Court finds it prudent to frame the injunction, wherever possible, in terms of the actual language of the constitutionally infirm statutory provision (meaning, here, "sales transactions conducted . . . by electronic exchange") and not in terms of non-statutory language (here, "online auction").[4] To do otherwise would force those subject to the injunction to discern the meaning, for purposes of the injunction, of the non-statutory term—including by attempting to discern any distinction between (or conversely, any equation of) any non-statutory terms included within the injunction and the constitutionally infirm language that is the basis for the injunction.

Here it is possible to frame the injunction solely in terms of the statutory language, without the necessity of including the non-statutory term that would cause the alert observer to wonder what the relationship is between an "online auction" and the statutory phrase "sale transaction conducted. . . by electronic means between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience." Parties subject to the injunction, and any other concerned persons, should not have to undertake that exercise, because the parties themselves have already indicated what the relationship is; in the parties' mutual view, the two phrases mean the same thing.[5] And since they mean the same thing, the use of the non-statutory term "online

---

[4] PC 471 does use the term (specifically, in two places in Section 6, "online auction" (or "online auctions")). But that term is not used in the relevant definition from Section 4(2).

[5] Plaintiffs made this equation when they referred to "an 'electronic exchange,' or an online auction . . ." (Doc. No. 5 at 6). Notably, considering the context of Plaintiffs' use of the word "or," it seems clear that here, as is sometimes the case in common parlance, "or" meant "also known as" or "*i.e.*." For their part, Defendants repeatedly implied that the reference to sales transactions conducted by electronic exchange (and otherwise meeting the definition of an auction) was a reference to online auctions. (Doc. No. 20 at 11 ("But a sales transaction completed by electronic means

auction" is redundant and hence unnecessary, not to mention potentially confusing. So the Court will omit any reference to "online auctions."

Accordingly, the Court will issue a permanent injunction that is narrower than the one proposed by Plaintiffs and, instead, substantively identical to the one proposed by Defendants. The permanent injunction that will be issued by the Court will provide:

---

is not protected speech any more than a sales transaction completed by oral or written means. Plaintiffs' transactions do not become protected speech merely because they are conducted online, rather than in person.")); (Doc. No. 110 at 3-4 ("The State did not invent the distinction between online auctions and timed listings . . . . Since online auctions resemble in-person auctions, they pose the same risks and require the same level of protection. Plaintiffs would have sellers and consumers who participate in online auctions be worthy of less protection than sellers and consumers who participate in the same transactions in person. The State's decision to provide the same protections to sellers and consumers who participate in online auctions is sufficient to justify PC 471 under any level of scrutiny.")); (Doc. No. 107 at 13 ("At least since 2001, the State has regulated online actions.")); (Doc. No. 107 at 8 ("While PC 471 may protect licensed auctioneers from competition, it also provides sellers and consumers who utilize online auctioneers the same protections afforded to sellers and consumers who utilize in-person auctions.")); (Doc. No. 107 at 2 ("It was also reasonable for the legislature to believe that online auctions pose the same risks and should be regulated in the same manner as oral or written auctions[.]")); (Doc. No. 13 at 7 ("It is difficult to comprehend how exchanges between the auctioneer and the audience are entitled to greater First Amendment protections when they are conducted online.")); (Doc. No. 53 at 9 (The State's scheme for regulating in-state auctions did not become an undue burden on interstate commerce merely because the State added the term electronic to the statutory definition of auction. Indeed, the State had already regulated online auctions originating from within Tennessee for eighteen years before the statutory change.")); (Doc. No. 53 at 9 ("The State is regulating auctions conducted within the State; it is not regulating the internet. The dormant Commerce Clause does not render otherwise regulable transactions unregulable simply because they are connected to the internet.")); (Doc. No. 5 at 3 (". . . add 'electronic' to the definition of an auction so as to include online auctions")); (Doc. No. 88-1 at 11 ("The State's scheme for regulating in-state auctions did not become an undue burden on interstate commerce merely because the State added the term electronic to the statutory definition of auction. Indeed, the State had already regulated online auctions originating from within Tennessee for eighteen years before the statutory change.")).

The Court notes that a sales transaction conceivably could be conducted by "electronic exchange"—meaning by an exchange that is electronic in nature—without being done "online." But the parties implicitly give this possibility short shrift. And to the extent that there is some distinction between an "online auction" and the "electronic exchange" variety of auction included within the definition in Section 4(2) of PC 471, the Court should and does frame its injunction exclusively in terms of the statutory definitional language from Section (4)(2), without injecting any distinguishable non-statutory concept of "online auction."

The Court likewise notes that a sales transaction conceivably could be conducted by an exchange that is "electronic" without being, or ever having had the potential of being, interstate in nature. In other words, hypothetically, in some cases an auction could be of the electronic exchange variety without being extraterritorial as would be the vast majority of such auctions. But the Court concludes that this hypothetical possibility is not enough for the constitutional infirm language to be enjoined completely, without some exception made for any particular case in which an "electronic exchange" kind of auction does not itself implicate extraterritoriality concerns. The Court so concludes because it discerns that a statute can be struck down in its entirety based on a statute having extraterrirotial application in at least some cases even if not in all cases. *See Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 583-84 (1986) (striking down on Dormant Commerce Clause grounds a New York state law that required liquor distillers and their agents (regardless of whether the distiller or agent was located in-state or out-of-state) to sell to wholesalers in New York in accordance with a price schedule filed with the State Liquor Authority).

> Defendants and their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby enjoined from applying Tennessee's auctioneering laws, licenses, and regulations to "sales transaction[s] conducted by . . . *electronic exchange* between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience." 2019 Tenn. Pub. Acts, Ch. 471, § 4 (emphasis added).

The issued injunction is crafted appropriately to encompass "the extent of the violation established." *Califano*, 442 U.S. 682 at 702; *see also Madsen*, 512 U.S. at 778 (explaining that an injunction should be "no more burdensome than necessary to provide complete relief"). The Court believes that such an injunction is an appropriate exercise of the discretion enjoyed by the Court in issuing a permanent injunction.[6]

Additionally, in Plaintiffs' Notice, Plaintiffs request the Court to set a briefing schedule on Plaintiffs' request for attorneys' fees (Doc. No. 118 at 5). In Defendants' Response, they contend that they plan on appealing the Court's Judgment; thus, Defendants ask the Court to defer setting a briefing schedule on Plaintiffs' request for attorneys' fees until after Defendants' appeal has concluded.

The official comment to Federal Rule of Civil Procedure 54 provides that: "If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved." *See* Fed. R. Civ. P. 54. Rather than resolving

---

[6] The decision to grant a permanent injunction is within the district court's sound discretion. *Kallstrom,* 136 F.3d at 1067. This discretion applies not only to the decision to grant an injunction, but also to the choice of language used in framing the injunction. *See e.g.*, *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 169 (3d Cir. 2011) ("District courts are afforded considerable discretion in framing injunctions."). Unsurprisingly, however, a district court abuses such discretion if it issues an overbroad injunction, *id.*, which (as should be readily apparent) is something the Court is keen not to do here. On the other hand, the Court seeks in its discretion to craft an injunction broad enough both to fully remedy the constitutional infirmity found by the Court and to fully remedy the injury suffered by Plaintiffs.

the instant Motion during the pendency of the appeal, the Court finds that justice and efficiency would be better served by denying the Motion without prejudice and with leave to refile (if appropriate) after the conclusion of the appeal. *See Kryder v. Estate of Rogers*, 321 F. Supp. 3d 803, 810 (M.D. Tenn. 2018) ("Rather than deciding an issue that could ultimately be for naught, or deciding it twice, the Court will defer ruling on the request for attorney's fees and costs until after the appeal has run.").

Thus, the Court will refrain from setting a briefing schedule on Plaintiffs' (apparently forthcoming) motion for attorneys' fees and costs. However, if Defendants do not file an appeal, the Court will extend the deadline for Plaintiffs to file a motion for attorneys' fees and costs until 14 days after the deadline for Defendants to file an appeal has expired.

The Injunction prescribed by this Order will be issued separately.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE